520-0064-WC Washington Group-Alberici Appellant versus the Workers' Compensation Commission Anthony Lamoro-Apolli. Okay before we begin counsel, Justice Hudson is unable to be with us because of a prior commitment but for the record he is a fully participating member of the Court on this case. He has the benefit fully of the written briefs that you have filed in this case and he will also have the benefit of both the audio and visual portion of this oral argument. Okay very good. So Ms. Hall will you proceed please? Good afternoon Justice Hudson. May it please the Court. My name is Laura Hall and I represent the Appellant Employer Washington Group Alberici in this claim. Before I get into the issues I want to provide a quick summary of the nature of the case. Appellee Anthony Lamoro filed an Illinois Workers' Compensation case which he alleged an injury to the right wrist while using vice grips at Olmstead Dam on November 14, 2013. The case proceeded to arbitration and a decision was issued by arbitrator Lindsay on July 11, 2017 finding in favor of Mr. Lamoro on the issue of accident but denying medical causation. Mr. Lamoro appealed and the Illinois Workers' Compensation Commission affirmed and adopted arbitrator Lindsay's decision on February 22, 2018. Mr. Lamoro sought review in the circuit court of Pulaski County and in an order dated November 1, 2018 the circuit court reversed the commission decision with respect to the issue of medical causation and remanded it back down to the commission. On remand the commission reconsidered the issue of medical causation and entered an award. We then filed an immediate appeal back to the circuit court of Pulaski County who affirmed the commission's finding on medical causation and award and this is the appeal of that decision and an appeal of the earlier interlocutory decision of the circuit court of Pulaski County dated November 1, 2018. Now our appeal focuses on medical causation and the commission's determination of medical causation is subject to a manifest way to the evidence standard of review. We believe that instead of determining whether arbitrator Lindsay's decision was against the evidence, the circuit court judge opted to re-weigh the evidence and substitute his own opinion for that of the arbitrators. I'd like to point out the two appellate court cases which involve similar behavior of circuit court judges applying the wrong standard of review and Gloucester-Mary Lee Court versus Industrial Commission the claimant worked. The arbitrator's decision was adopted in total by the commission? Correct. Okay so it's really the commission's decision. Okay sorry. The claimant in this case worked on a food production line and filed an application alleging a repetitive trauma to her bilateral knees. This case like ours preceded arbitration and a decision was rendered finding the claimant had failed to prove her knee injury was related and not a result of the normal degenerative aging process. The arbitrator found she did not establish that her squatting and stooping rose to the level of activity sufficient to constitute an accident. The claimant appealed the ruling and the commission affirmed and adopted the arbitrator's decision and the claimant again sought review in the circuit court and like in our case the circuit court reversed the decision and remanded it back to the commission where an award was issued in favor of the claimant. That decision was appealed to the circuit court who of course affirmed their own decision and then to the appellate court. The appellate court found the circuit court concluded in their initial decision that the testimony of a different doctor was more credible than the testimony of the doctor relied upon by the arbitrator. The appellate court held when the credibility of witnesses is a determining issue a question of fact remains and de novo review is inappropriate. The appellate court pointed out that where there is sufficient evidence to support original decision the resolution of credibility of witnesses including medical testimony is solely the province of the commission. The circuit court was scolded for substituting its judgment for that of the commission. In response the appellate court vacated the orders of the circuit court and the original commission decision was reinstated. Similarly in Lenhart Tool and Dye Company versus Industrial Commission the claimant Steve Decker testified he'd been working on a grinder machine and he attempted to remove a wheel when it hit his right leg. The claimant sought treatment at emergency department where he diagnosed him with arthritic and degenerative changes in the right knee. Mr. Decker was eventually recommended for surgery. His treating physician Dr. Holt believed his condition was related to his well-documented pre-existing problems. His second treating physician Dr. Sturman disagreed finding the work accident aggravated this condition. The commission affirmed and adopted the arbitrator's decision denying accident without comment. Upon appeal the circuit court reversed dismissing Dr. Holt's opinion as ultra conservative and finding the evidence overwhelmingly showed that the claimant aggravated his pre-existing condition. On remand the commission entered a ward. The employer argued on appeal at the appellate court that the circuit court had substituted its judgment for that of the commission and the appellate court agreed finding the commission's original decision was supported by the testimony of the initial treating physician Dr. Holt and the claimant's extensive history of problems with the right knee. The appellate court noted the test of whether the commission's decision was supported by the manifesto of the evidence is not whether the reviewing court or any other tribunal might reach the opposite conclusion but whether there was sufficient factual evidence to support the record and the commission's decision. Well Ms. Holland let me help you. I think you're giving us a synopsis of cases right? I'm done. I'm going to the back. Are you really? Okay because we're here for you have a commission decision that's in your favor am I correct? Correct. And the circuit court reversed that decision correct? Correct. Okay so you're here to really tell us why the commission's decision is should be sustained at this level of review. Okay so like in our case we believe the circuit court judge reweighed the evidence and credibility. The circuit court judge disputed the arbitrator's concerns regarding the likely existence of a prior right wrist injury as well as the blatant inconsistency. The judge also disagreed that with the arbitrator that the testimony of Mr. Lyons indicating appellate told him he rebroke his hand was significant. We feel by disagreeing with the testimony that was disagreeing that the testimony was significant he re-evaluated the credibility of the witness a job reserved for fact finder. The judge argued the evidence. We don't really care what the circuit court said. Okay we're here to find out why in your argument the commission's decision the first and original condition was correct. Okay well there's no dispute that the appellate continued working his regular iron working duties 10 hours a day until he was laid off in December. He also began working for a different employer after that. He also failed to present for his follow-up appointment until after he was laid off. Further there was no causation opinion from the original treating doctor Dr. Tobin linking the condition to the work accident on November 14, 2013 and some of his records indicate the condition was not work related. There's also evidence in the initial treaters records which indicate prior problems to the right wrist. At trial the appellate reported he had no prior issues with the right wrist aside from a laceration. Imaging would prove that he at least had undergone a carpal tunnel release in 2010 which he failed to disclose. I think his failure to address and acknowledge his prior treatment hurt his credibility and left the arbitrator with inconsistent statements and unanswered questions. The arbitrator also noted the appellee reported different symptoms in his initial ER visit as compared to his follow-up visit with Dr. Tobin after the gap in treatment. Specifically in his initial ER visit he reported pain in the knuckles and the metacarpal phalangeal area and he makes no complaints regarding the thumb or the wrist and then when he presents for his next treatment date with Dr. Tobin he reports pain in the wrist and thumb. There's also evidence on the MRI that there was an old fracture a soft tissue ligament injury and his treater even noted the injury to the ulnar collateral ligament looked old. The arbitrator also found the deposition of his second treating physician Dr. Lenson persuasive. Please keep in mind this is the only doctor that gave a causation opinion which was not much of an opinion as you'll find out. She pointed out that he didn't know this was a work injury occurring on November 14, 2013. He didn't know throughout the course of the treatment that this was a work injury. He was unfamiliar with his prior treatment at the ER and his treatment with the first treater Dr. Tobin. He didn't review the prior imaging at the ER with Dr. Tobin and he didn't compare those to his own imaging and most importantly he never testified at his deposition to a reasonable degree of medical certainty that the condition and Apolli's risk was caused by the work accident on November 14, 2013 at Olmstead. He testified the mechanism of injury probably could have caused this condition but he never specified. He also agreed that the complaints at the initial ER visit were centered around the knuckles and that when he came to him the complaints were in the wrist. You know and we feel the arbitrator felt that these unanswered questions and inconsistencies in history failed to meet a certain proof. I mean these histories are the same that were provided to the treating physicians and the strength of the medical causation turns on the accuracy of his subjective history provided to the injured worker given his history was not credible medical causation was not established. We also find it interesting that in the initial ER x-ray there was no note of a fracture and only degenerative changes yet when he follows up with Dr. Tobin for his next visit Dr. Tobin again takes an x-ray and finds a fracture of the thumb and a widening of the scapula space which is what he's ultimately diagnosed with. So our question is obviously there's a disconnect between why those findings didn't show up in the initial ER report if they were related to this work accident. Overall we feel that it was petitioner's burden of proof to prove that his case was related to this work accident. We feel given his inconsistent statements and the disconnect in the treatment as well as the the unpersuasiveness of Dr. Lentz's testimony who is the only treating physician who gave an opinion those are the reasons we find that supported the arbitrator's finding a commission's finding. Thank you. Okay very good thank you Ms. Hall you'll have time in reply. Mr. Farrell. Thank you very much your honor. Acknowledging at the outset that this review is a manifest way of the evidence I understand that's a higher bar than your average preponderance standard but that being said it's not an insurmountable standard. If it was an insurmountable standard then there'd never be a recourse for an erroneous commission decision. I think if the court reviews the full record in this case in light of the arguments of the parties it's going to be very apparent that the injury that Mr. Lamarosa sustained on November 14, 2013 was an abulgent fracture of his thumb and the scapula lunate disassociation of his wrist. One of the things that we have to keep in mind when we are evaluating this case is we have an established accident. We have a factually established accident that's been found to have occurred on November 14, 2013 involving an injury to the right wrist of Mr. Lamarosa. So all of the evidence that we're discussing needs to be taken in light of the fact that that has been established in this case and unchallenged. We know that on the same day, November 14, 2013, that Mr. Lamarosa reported to St. Francis Medical Center emergency room at 5 30 p.m. right after his shift. There he reported in the triage notes that he injured his right hand squeezing a vice grip at approximately 10 o'clock a.m. on November 14 at work. He reported hand uh opposing counsels made reference to reports of pain on the in the metacarpal or on the back dorsal side of the hand. That is an exact question that I asked or was asked to Dr. Lentz in his deposition and Dr. Lentz said that's actually consistent with a scapula lunate injury for it to manifest with pain on the dorsal side of the hand. He said that's very common. So the inconsistent with Mr. Lamarosa ultimate diagnosis in this case and I don't think that that lawyer here. We know that arbitrator Lindsay and ultimately the commission found the St. Francis Medical Center records from that very night to be highly significant in her finding that an accident did in fact occur. We know the St. Francis Medical Center referred Dr. Lamarosa to Dr. Tobin, a hand specialist, upon his release that very night. The employee testified that unfortunately he did not have the financial wherewithal to take off work or miss any work. So he continued to work for the next two or three weeks until his job was completed at which time the very next day after the completion of his job he did go to Dr. Tobin and that is when Dr. Tobin diagnosed him on December 3rd with the exact issue or exact injury at issue in this case. The abulsion fracture to the thumb and the scapula lunate disassociation. Dr. Tobin's notes reflect that Mr. Lamarosa once again told him that he injured his right wrist. The injury which he is seeking treatment for from Dr. Tobin while working on Olmstead Dam and applying a vice grip with all the power he could muster. He locked it down and immediately felt substantial pain. Dr. Tobin did diagnostic tests on him and diagnosed him with the injury in this case and recommended surgery. Surgery would have been completed with Dr. Tobin but for a billing issue that arose Dr. Tobin's office canceled the surgery and Mr. Lamarosa was forced to get a referral to ultimately Dr. Lentz who evaluated him on March 24th. Dr. Lentz evaluated him, looked at the records and later testified that the injury that he had on or the condition he had on March 24th was the same condition that he presented to Dr. Lentz with on December 3rd. So we know that within three weeks of the accident he is diagnosed with this acute injury. Dr. Lentz ultimately performed the surgery in this case and he was the Tobin was never deposed because he didn't provide any substantial treatment to Mr. Lamarosa outside of that one initial consultation. So Dr. Lentz testified to several things that I think do aid in the causation opinion in this case. First of all he testified that a large man such as Mr. Lamarosa squeezing hard on a vice grip between his thumb and his hand is a competent mechanism to cause this injury. He even took it a little bit further and said he has in fact seen two different patients in his career who suffered the same injury from squeezing hard with their thumb and hand but with an object between the thumb and hand. He looked through all the records and could find no other potential cause of this acute injury other than the accident that occurred at work and consistently described by Mr. Lamarosa. One of the things the court obviously has to look at in this situation in well did he give to a reasonable degree of medical certainty a causation opinion? He testified at the outset of his deposition that his opinions would be rendered within a reasonable degree of medical certainty unless he stated otherwise that he could not. So I think that part of the standard is met. He did say that the mechanism of injury that we described and that was described by Mr. Lamarosa on his records probably could cause the abolishment fracture. That was I think his exact testimony and I do believe that that is sufficient to support Mr. Lamarosa's proof in this case. So are you suggesting then the commission was just in error when it when it found that Dr. Lentz did not testify within a reasonable degree of medical certainty that is the claimant's condition was? I think the disagreement is that he used the term probably could cause as opposed to did cause and I think that's the only disagreement that I have with the commission's opinion. The actual testimony was probably could cause and I think the commission was looking for did cause. Dr. Lentz never testified that it did cause. He said that it probably could cause and so I think that's where the disagreement was between myself and the commission as to whether or not Dr. Lentz's opinion was sufficient on that issue. Okay. One of the things that I want the court to do and I appreciate the question is to take a look at what evidence was offered in opposition to medical causation in this case. There was not a medical opinion of any kind obtained by the employer and there was no expert opinion on the issue of causation offered by the employer whatsoever. The only medical opinion in this case was Dr. Lentz. Additionally, the appellant offered no medical records whatsoever to contradict Dr. Lentz's opinion or the employee's position in this case. They offered no medical records of a prior injury, a subsequent injury, never offered any evidence of a subsequent mechanism of injury or anything of the like that we could rely on and say okay that is evidence that this avulsion fracture did not occur at the time that Mr. Lamoureux was involved in his 14th. While the timeline is not perfect, I think the court's aware that very rarely is there ever a perfect medical timeline in any case, but we do have a report to the ER the very day of the accident that we knew that has been found to have occurred. We do know that within three weeks of the accident occurring, we have a full and final diagnosis of the acute injury of an avulsion fracture to the thumb and subsequent scapulae lunate disassociation that had to be repaired. I think that that tight timeline in the medical records further supports that the injury and accident that we know for a fact because of arbitrator and admissions findings occurred on November 14, 2013. That's close enough in time that I think it helps aid the argument that the actual injury suffered was the avulsion fracture and I know the court's not interested in the trial court's opinion and I'm just citing this because I also thought it was a compelling argument that was referenced by the trial court in its review of this case and that is if the if the employee didn't suffer an acute the avulsion fracture of his thumb at that work has been found to have occurred on November 14th, what injury did he suffer to his hand and wrist? There's no evidence of any other injury in this case. Turning to a few points that were made by the commission ultimately in adopting the arbitrator's opinion, they referenced that Dr. Tobin's office notes from July of 2010 referenced a prior right hand procedure. Just to be clear, those notes are in the record and those notes are notes from some office staff at Dr. Tobin's office, not from a physician. They don't detail any prior right hand or wrist problems and I'm fairly certain that they actually deal with a prior right carpal tunnel release that Mr. Lambrow underwent. That procedure is documented elsewhere in his records as a prior wrist surgery, so I don't think that has any bearing on what injury he sustained on November 14th. Was that the right hand wrist? It was the right carpal tunnel, your honor. That's what I mean, right, yeah, right wrist. Correct. And the second point that the arbitrator pointed to was a lack of testimony of no prior right hand injuries in this case. Well, to be fully candid with court, there had never been any medical evidence presented or any argument ever set forth that there was any prior right hand injuries prior to this accident. The petitioner was asked to go over all of his prior injuries and he went over injuries to his left wrist, which had been substantial, injuries to his back, knees, ankles, a laceration of his right hand. He went through a litany of prior work related injuries and never never discussed any prior right hand and wrist or thumb and wrist injury because just quite frankly none ever existed. If one existed, I'm fairly certain the court would have provided with the medical records to support that. Counsel, is there any explanation for the x-ray found degenerative condition? What would be the explanation? Neither of the experts reviewed that particular x-ray. I do not know why the radiologist's findings on that x-ray differ from the findings of Dr. Tobin some three weeks later. I can't speak for why the radiologist interpreted it differently than Dr. Tobin did. I know that Dr. Tobin and Dr. Lentz both reviewed x-rays and found that both of them did show the avulsion fracture, so I do not know why the prior x-ray did not reveal that. I think the degenerative changes are likely just common degenerative changes that are probably found in the wrist of any iron worker. Were any degenerative changes noted in a surgical report? Your Honor, I don't know off the top of my head and I do not want to misspeak, but I do not recall any degenerative changes being referenced and I do not recall a chronic injury or an injury that occurs slowly over time. It takes a substantial force to create this kind of fracture and damage to the wrist. So your view is the radiologist's opinion is an outlier? That's my position, Your Honor, because it's inconsistent with what I would consider the experts in this case being Dr. Tobin's findings and Dr. Lentz's findings. And finally, just touching on, I don't know, I've not seen my time limitation, so if I'm up near it, please let me know. The green light is still on. Okay, I don't have it on my screen, so that's why. Oh, you don't? Oh, do you, Ms. Hall, have the lights on? You do, okay. Okay, I apologize, I don't, Your Honor. So finally, touching on the last issue is there was reference by a co-employee that when Mr. Lambrow called and reported his injury, he was reporting the re-breaking of his hand. And I think that the confusion there leads from the fact that Mr. Lambrow has had extensive damage to his left wrist, totally unrelated to this and prior accidents years before. He has plates from basically the middle of his hand all the way up to, and pins all the way up to his elbow. He has broken that wrist multiple times and had to have all those pins replaced, and he testified to that. I think that Mr. Lyons was simply confused, having known of his prior left wrist injuries, that he thought when he called in he had re-broke his left wrist. He did not. He never stated anything about his left wrist being injured. That's a complete red herring in this case. So I don't have anything else in regard to the and just very simply, those cases involved situations where you had competing medical opinions. And the circuit court found, or the commission found one medical opinion credible, and the circuit court disagreed and found the other medical opinion more credible. That's the perfect situation for reversal. That is the circuit court substituting its opinion on credibility. That is not the case here. We have one medical opinion in this case. We do not have in two different instances, the commission made reference to the fact that it found the petitioner's testimony credible. One on the issue of the disability form, and also on the issue of the detail that he provided as to how his injury occurred. So two different instances, the commission has found the petitioner's testimony to be credible, and I think that's important. Finally, the commission never said at any point that it found Dr. Lentz to be uncredible or not credible, simply that it was not persuaded by his testimony. And I think that's important. And I have no further statements unless the court has additional questions, I'd be glad to answer. No, your time is up, Mr. Farrell. Thank you. Thank you. Ms. Hall, you may reply. Um, so I want to clarify the reason we didn't obtain a causation or an IME is because we were already denying the claim based on accident, notice and causation. The accident wasn't, the employer wasn't provided notice till he after he left the job site when he was laid off. Obviously, we lost on notice on our notice defense. And then then for our causation, or our accident defense, there is no evidence to prove that we were aware or that this accident even happened other than this ER visit, which came out later. So I don't think it matters that this is just one doctor's opinion. In this case, I think it's still the petitioner's burden to prove that that opinion is sufficient to causally connect this accident to his condition. And I don't think his opinion does that he states it probably could cause this, but then he doesn't even link that this accident could probably cause this condition. He just says, you know, this type of gripping could probably cause this condition. So he doesn't even link it to the to the right date of accident. I know that there is medical the medical records that do indicate the prior treatment were entered in by a petitioner's counsel himself. And we find it uncredible that petitioner could not remember whether or not he had any other prior risk treatment. He said all the only treatment he had was a laceration he was he was questioned on it. He didn't he failed to even mention the carpal tunnel syndrome, which would have occurred in 2010. And he didn't even report that, let alone any other type of injury that might be going on. And we feel that the x ray from the initial ER report not showing these conditions is significant proof for the arbitrator to rely on to prove that maybe this accident didn't cause the ultimate condition of this avulsion fracture and the scaphoid disassociation. I mean, it's a fracture. So surely when he showed up to the ER after the immediately after the accident, it would have shown up, it wouldn't have not been there. So I think, I think that alone is proof that that this accident may not have caused this ultimate condition. And maybe it just caused I think the ER diagnosed him with hand pain. I think Dr. Lynch, you know, he he himself agreed that at the symptoms he reported during the initial ER visit were different when he saw Dr. Tobin and when he saw himself. I mean, I think that's further evidence. I just think, you know, I mean, there's plenty of evidence to prove that the arbitrator had support for this decision. And I think that's what needs to be focused on. You know, opposing counsel wanting to say that Dr. Lyons testimony about him re breaking his hand was just confusion. Well, that's him reweighing the credibility of the of the witness again, you know, something that he shouldn't be doing. That's the reserve for the arbitrator. And there's other things. It's the gap in treatment. It's, you know, it's the the fact that he kept working, he was able to continue working his job, he was able to work a different job. There's just enough here to make that support to find in favor of the arbitrator. I think that on the on the issue on the issue of causation, though, the commission found it very persuasive, if you will, that that Dr. Lentz was apparently are allegedly unaware of the right hand injury from 2010. Is that correct? So he he was unaware of all prior injuries. He was unaware that this, this injury that he was treating for was even a work injury. He noted that throughout the course of the treatment, he didn't know he would have put more detail in his records had he known. He never reviewed the prior records from the ER. He never reviewed Dr. Tobin's records. He never compared them. I mean, and then he gave the opinion that it probably could without linking it to the specific accident to the specific condition. And it's just all together is enough to support the arbitrator's finding, which is what what the standard of review is. And I think, you know, it's it's petitioners burden to prove accident and causation. If he was only supposed to prove accident, you know, then why had why required him to prove causation at all? Right. I mean, if you're going to say there's an accident, there's automatically causation. I think I think he needed to prove both, which is why it's in the law. And he didn't do that. And that's what the arbitrator found. I mean, I think because he isn't able to prove causation, his whole claim fails. What was the prior incident to the right hand? Well, so he never he denied having any prior incidents, but we don't know. And that's the part the arbitrator can't figure out. You know, the only thing we do know is an MRI indicates a prior carpal tunnel release. And then we have the records from Dr. Tobin, which indicate a prior surgery. It could be the carpal tunnel. It could be something else. This injury to the to the wrist. Correct. The right wrist, the same. Yeah. But what's his condition of ill being? It's to the hand, isn't it? Or am I mistaken? So when he goes to the ER, he reports pain in the knuckles. Right. And then when he goes to see Dr. Tobin next, he reports pain in the wrist and the thumb. And so it's kind of different. It's confusing, right? Because he changes his symptoms. And now he ended up getting surgery on the wrist and the thumb. So that's what they're trying to relate to the to the accident. But there's a disconnect from the initial ER and this visit. Where's the scapular anatomically? It's it's down below by the wrist. Yeah, but it's above the wrist or I mean, above it's below the wrist, right? That's my understanding. It connects the thumb. It's in the right. Right. Okay. Very well. Thank you both for your arguments in this matter. We'll be taking our advisement.